FERGUSON *v.* MONTGOMERY.

Opinion delivered March 28, 1921.

1. ELECTIONS—PRIMARY ELECTION CONTEST—SUPPORTING AFFIDAVITS. —The provision in Crawford & Moses' Digest, § 3757, that a complaint in a primary election contest shall be supported by the affidavit of at least ten reputable citizens is satisfied where the required number of reputable citizens combine in one affi-

davit, made upon belief merely, without setting forth the facts upon which their belief is based.

2.  ELECTIONS — AFFIANTS TO BE OF SAME PARTY.—Crawford & Moses' Digest, § 3772, providing that a complaint in a primary election contest shall be supported by the affidavit of at least ten reputable citizens, implies that such affiants shall be members of the same political party with contestant.

3.  ELECTIONS — PRIMARY ELECTION CONTEST — SUFFICIENCY OF COMPLAINT.—A complaint in a primary election contest should not be dismissed because the affidavit of ten reputable citizens, required by Crawford & Moses' Digest, § 3772, failed to state that such affiants were of the same political party with contestant.

4.  ELECTIONS — PRIMARY ELECTION CONTEST — AMENDMENT OF COMPLAINT.—Where the original complaint in a primary election contest alleged that illegal votes were cast for contestee in certain townships, it was not error to permit contestant to amend his complaint to include other townships in which the evidence showed that illegal votes were cast for contestee; there being no showing that the amendment would unduly delay the trial.

5.  ELECTIONS—CONTROL OF COURTS OVER PRIMARY ELECTIONS.—Except to the extent that jurisdiction is conferred or regulated by statute, the courts have no power to interfere with the judgments of the constituted authorities of political parties in matters involving party government and discipline, or to determine disputes within a political party as to the regularity of the election of its executive officers.

6.  ELECTIONS—REGULATION OF PRIMARY ELECTIONS.—The existence of political parties may be recognized by the State, and within reasonable limits the means by which partisan voters shall be protected in exercising their preferences for party candidates may be regulated.

7.  ELECTIONS—PRIMARY ELECTIONS.—The object of holding a primary election by a political party is to select party candidates, and no voter should be permitted to vote at the primary election of a political party unless he is a member of such party.

8.  ELECTIONS—PRIMARY ELECTIONS.—The avowed purpose of Crawford & Moses' Digest, § 3778, is to take away from political parties the right to provide rules regulating primary election contests, but it does not affect the tests required of voters at the primaries held by such parties.

9.  ELECTIONS — PRIMARY ELECTIONS — REVIEW.—In primary election contests the courts may review the action of the duly constituted authorities of a political party in allowing members of an opposition party to vote in a primary.

10. ELECTIONS—PRIMARY ELECTIONS.—It is the duty of the courts to construe the act regulating primary election contests so as to advance the remedy provided by the act, rather than to render it futile or unavailing.

11. ELECTIONS—PRIMARY ELECTIONS.—In a contest over a nomination in a Democratic primary, where the rules of the party provided that none but Democrats should participate therein, it was error to refuse to permit contestant to prove that certain Republicans were allowed to vote for contestee.

12. ELECTIONS—EVIDENCE—ILLEGAL VOTES.—In a contest of the Democratic nomination for a county office, contestant's offer of proof that a number of Republicans had voted for the contestee *held* sufficiently definite.

13. ELECTIONS—NECESSITY OF CHALLENGING VOTERS.—In a contest for the Democratic nomination, the contestant did not lose his right to object to Republican votes for contestee because he did not challenge such votes at the polls.

14. ELECTIONS—PRIMARY ELECTIONS—FRAUD.—It was not error to refuse to throw out the entire vote of a township on account of illegal votes, though the judges and clerks of election failed to make duplicate register of the names of the electors in the order in which they presented their ballots, as required by § 3765, Crawford & Moses' Digest, since the requirement in that section that each ballot shall be signed by the voter afforded a means of eliminating the illegal votes.

15. ELECTIONS—PRIMARY ELECTION CONTEST—OUSTER OF DEFENDANT.— Under Crawford & Moses' Digest, § 3776, providing that, if a nomination contest should not be finally determined until after an election, and the defendant is elected and found not entitled to the nomination, the judgment should operate as an ouster, the word "defendant" should be construed to mean the party who defends the suit when finally determined, whether in the circuit court or in the Supreme Court, so that it applies equally to contestant and contestee.

Appeal from Johnson Circuit Court; *A. B. Priddy,* Judge; reversed.

STATEMENT OF FACTS.

This is a suit to contest a primary election brought in the circuit court under our statute, by J. M. Montgomery against G. D. Ferguson to contest the nomination for the office of county judge of Johnson County.

Montgomery, the contestant, alleged that he received more legal votes for the office of county judge in the

Democratic primary held the 10th day of August, 1920, than were cast for Ferguson, the contestee, but that the latter had been returned as the the Democratic nominee for said office.

In his complaint, Montgomery alleged that certain fraudulent practices were indulged in and certain illegal votes were cast for Ferguson in certain voting precincts named in his complaint. His complaint states the number of illegal votes received by Ferguson and the townships in which they were received.

Ferguson filed an answer within the time prescribed by the statute and specifically denied the allegations of the complaint. He stated that certain illegal votes were cast for the contestant in certain townships named by him in his answer.

The number and character of the illegal votes are stated in the answer. The proof developed irregularities and illegal votes in other townships than those named in the pleadings, and Montgomery was permitted during the trial to amend his complaint to conform to the proof taken. This was done over the objections of Ferguson.

At the conclusion of the hearing the circuit court found that Montgomery had received fifty-five more votes in the primary election than Ferguson. Judgment was accordingly rendered declaring Montgomery the Democratic nominee for the office of county judge of Johnson County, and his name was ordered to be placed upon the official ballot to be voted in the general election held in said county on Tuesday, November 2, 1920.

From the judgment rendered, Ferguson has duly prosecuted an appeal to this court.

Montgomery was duly elected at the general election aforesaid and has been holding the office of county judge of Johnson County since that time.

*Jesse Reynolds, Paul McKennon* and *Hill & Fitzhugh,* for appellant.

1.   The court erred in overruling the complaint on account of the insufficiency of the supporting affidavit.

2.   It was error to refuse to admit testimony as to the alleged Republican votes cast for Montgomery.   This was a Democratic primary, and Republican votes could not be counted.   Ballots not numbered were counted, and the vote in Pittsburgh township should have been cast out.

Ward township's vote should have been cast out, and the judges bet on the election.   Illegal votes were cast by Republicans.   125 Pac. 739; 129 Cal. 337; 61 Pac. 1115; 22 S. D. 146; 115 N. W. 1121; 228 Ill. 111; 81 N. E. 1109; 40 Ore. 166; 66 Pac. 714; 92 Neb. 313; 43 L. R. A. (N. S.) 282.   Under the law no candidate should be declared a Democratic nominee where his majority is made up of Republican votes.   The court went beyond the pleadings in making its findings.   Its departure from the issues was material, and the evidence did not authorize it.   159 S. W. 646.   Ballots not numbered were illegal. Kirby's Digest, § 2811; 69 Ark. 501; Brundidge act, § 9.

In Stonewall township not all the ballots were signed, and in Pittsburgh Township twenty-two ballots were not signed.   In two townships judges of election were forced out by physical or moral suasion and by-standers not electors, or committee, chosen their successors.   Kirby's Digest, §§ 2801-2.   The Constitution and laws were ignored and violated, and the law should be upheld.

*Webb Covington,* for appellee.

1.   The supporting affidavit was sufficient.   136 Ark. 217; 136 Ark. 221.

2.   The law authorizes the amending of the complaint.   Initiative act No. 1, § 12, p. 296; 125 Ark. 561-2.

The allegations of the complaint were sufficiently broad, and it was the duty of the court to repect all illegal ballots.   32 Ark. 561.

3.   The complaint was subject to amendment.   159 S. W. 646.

4.   No illegal votes were counted.   Initiative act No. 1, § 17, p. 2302, Acts 1917.   See 26 R. C. L., § 35, p. 1032; 95 Ark. 443; 57 N. J. L. 442; 51 Am. St. 624.

Courts do not require a voter to disclose for whom he voted. 49 Ark. 238; 53 *Id.* 172. The act is constitutional. 40 Ore 167; 66 Pac. 714.

None of the objections made by appellant are fatal. 43 Ark. 62. Illegal votes do not affect the result of an election unless it appears how they were cast. 54 Ark. 409. The returns are accepted when purged of the illegal votes. 73 Ark. 187. It is immaterial whether illegal votes are received or not if not sufficient to overcome the majority. 39 Ark. 549. Nothing will justify the exclusion of an entire township vote if the election has been legally held and fairly conducted, unless it renders it impossible to ascertain the majority vote. 124 Ark. 256; 49 *Id.* 241. There was no error in the Pittsburgh vote, nor in Grant Township, nor in Hill Township. As far as the returns show, no election was held in Hill Township. It takes poll books and tally sheets to make a *prima facie* showing of an election. 102 Ark. 651. The returns are shown by the record to be in the handwriting of one man, Tom Holland. The entire ticket is in his handwriting, and there was no certificate of the judges and clerks. This is not such a return as requires appellee to produce any proof whatever. Hill Township vote should have been excluded from the count, and it gave appellant twenty-five votes and appellee one. The evidence in reference to the vote in Ward township fails to disclose any state of facts calling for a recount, and the court properly overruled the motion.

It is admitted that probably 500 names were added to the polltax list after the 3d of July, 1920. These polltax receipts were illegal, and there were erasures and changes in the record, as shown by the testimony.

At the general election in November, 1920, the county judge was elected in Johnson County; and if appellee was elected county judge, the result of this cause can not affect that election.

There were combinations and numerous violations of law. Acts 1913, act 308, §§ 10-12. There was a com-

bination to defeat the will of the people and deprive them of their choice for county judge. They violated the election laws. It is clear that they did not intend for appellee to receive the nomination and resorted to many illegal methods to defeat him. The court below had the parties before him and heard all the evidence, and the findings are supported by the law and a clear preponderance of the evidence.

HART, J. (after stating the facts). By the Initiative Act of 1917, it is provided that all political parties selecting their candidates for office through primary elections shall be subject to the provisions of the act, and that all primary elections for the nomination of county, district, and State offices, shall be held on the same day. Crawford & Moses' Digest, § 3757.

Another section of the act gives any candidate the right to contest the nomination by an action brought in the circuit court.

It further provides that the complaint "shall be supported by the affidavit of at least ten reputable citizens and shall be filed within ten days of the certification complained of, if the complaint is against the certification in one county. Crawford & Moses' Digest, § 3772.

Montgomery filed with his complaint an affidavit signed by ten persons, the body of which is as follows:

"Comes J. V. Herring, Rafe Stegall, J. J. Lingar, Sam Harris, Dave Timmons, Ewell Love, J. F. Simmons, Jas. M. Lewis, E. E. Gifford, W. B. Cox, S. J. Morgan, and C. H. Love, ten reputable citizens of said county, and State of Arkansas, and state under oath that the statements made in the foregoing complaint are true to the best of their knowledge, information and belief."

Ferguson filed a motion to dismiss the complaint on account of the insufficiency of this supporting affidavit.

The court overruled the motion, and error is assigned to the action of the court in this regard.

We do not agree with counsel in this contention. In *Logan* v. *Russell,* 136 Ark. 217, the court held that under

the above section the affidavits of ten reputable citizens need not be separate, but may be combined in one affidavit and made upon the belief of the affiants merely, without setting forth the facts upon which their belief is based.

The court also held that the affidavits are jurisdictional, and that the complant and affidavits must be filed within the time specified.

In the instant case, the affidavits were filed within the time required by the statute, and under the decision just referred to the affidavit was sufficient in form. That is to say, all the affiants signed the same affidavit, and it was not necessary to state the facts upon which their support of the complaint rests.

But it is insisted that the affidavit is defective because it does not state that the affiants were members of the Democratic party, and that this was necessary under the statute. On the other hand, it is claimed that the statute does not prescribe that the affiants shall be members of the Democratic party. It is true that the statute does not so state in express terms, but we think such is the necessary implication from its language when considered with reference to the declared purpose of the statute.

In *Simmons* v. *Terral*, 145 Ark. 585, the court had the section under consideration and held that the word, "citizens," as used in the section, is synonymous with the word, "electors." The court said that the known object of the law was to prevent fraud in the exercise of political privileges, and that, inasmuch as these privileges are accorded by the act to electors only, it was clear that the word, "citizens," as used in the act, was intended to be synonymous with "electors."

Now the object of primary election statutes is to give the electors of recognized political parties the immediate control in the selection of their own candidates. Therefore, only those who are entitled to participate in the primary were directly interested in the election and could be said to be reputable citizens or electors within the meaning of the statute.

The intent of the statute was to regulate party nominations by the vote of the electors of the respective parties, and only such electors are entitled to vote in the primaries. The statute provides for primary elections for the recognized political parties, and it was evidently intended that only those might participate in the primaries who belonged to the political faith of the party holding the election. If the framers of the act meant "reputable citizens" to be "electors," it certainly meant electors who were entitled to vote at the primary election which was to be contested. Otherwise, the members of other political parties might sign the affidavits for the purpose of creating dissension or injuring the political party holding the primary.

It does not follow, however, that the complaint should have been dismissed, because the affidavit filed followed the language of the statute, and, under the decisions cited above, this was all that was necessary. Of course, if it had been shown by proof that the affiants were not Democrats, this would have been fatal to the complaint under the decisions above cited; and the proceedings should have been dismissed for noncompliance with the statute. In our State the primary is the means of nomination of all officers, State, district and county, and the object of our primary statute was to provide a method whereby the partisan voter could express his choice for his candidate under the protection of the State by means similar in practice to the Australian ballot in use in the general elections. The framers of the act did not contemplate that the members of any other party than the one holding the primary should be permitted to vote in it or to participate in any contest under the provisions of the statute.

It is next insisted that the court erred in permitting Montgomery to amend his complaint. In his original complaint Montgomery alleged that certain illegal votes had been cast for his opponent in certain townships named in his complaint.

In his answer Ferguson alleged that certain illegal votes had been cast for Montgomery in certain other

townships named in his answer. During the progress of the trial it developed that certain illegal votes were cast for Ferguson in other townships than those named in either the complaint or answer, and Montgomery was allowed to amend his complaint so as to embrace these other townships.

We do not think there was any error in this regard. As just stated, the statute recognizes the use of the political parties by the people, and its object was to enable the members of the recognized political parties to express their choice for a candidate to be nominated by their respective parties by means similar in practice to those used at the general elections.

In *Govan* v. *Jackson*, 32 Ark. 553, the court said that the real inquiry in election contests was as to whether the contestant or the respondent received the highest number of legal votes, and was not confined to the ground specified in the contestant's notice of contest.

So here the object of the pleadings was to produce a single issue, and that issue was whether or not certain illegal votes of a designated kind had been received at the primary election. The proceeding is entirely statutory. The act contemplates that there shall be a summary trial and disposition of the case to the end that if the contestant is successful he may be voted for at the general election or, if the contest is not finally determined until after the general election, the term of office or a material part thereof shall not have expired.

It is impossible to state with precision the rule with regard to amendments of the pleadings. Much must be left to the discretion of the court, or the very object of the statute will be defeated. On the one hand, the contestant should not be allowed to make amendments which would necessarily unduly delay the trial of the contest, and on the other hand he should be allowed to make amendments in all cases where no such delay would result and where the amendment was made for the purpose of presenting the issues with due diligence,

As stated in *Mann* v. *Cassidy,* 1 Brewster's Penn. Repts., p. 11, "The rule must not be held so strict as to afford protection to fraud, by which the will of the people is set at nought; nor so loose as to permit the acts of sworn officers, chosen by the people, to be inquired into without an adequate and well-defined cause."

There is no provision in the act prohibiting amendments, and there is nothing in the record tending to show that the amendment would have unduly delayed the trial of the case. Therefore, we think that the court did not err in allowing the amendment.

It is next insisted that the court erred in **refusing** to allow Ferguson to prove that certain Republicans were allowed to vote for Montgomery and in sustaining a demurrer to his answer in which the same fact was alleged.

In this contention we think counsel are correct. Except to the extent that jurisdiction is conferred by statute or that the subject has been regulated by statute, the courts have no power to interfere with the judgments of the constituted authorities of established political parties in matters involving party government and discipline, or to determine disputes within a political party as to the regularity of the election of its executive officers. 20 C. J., par. 158, p. 137. The rule as thus laid down was recognized and applied by this court in *Walls* v. *Brundidge,* 109 Ark. 250.

Primary election laws were unknown under the common law. They are purely the creatures of statute, and every provision for contesting such elections is directed by statute. The same object is sought in allowing contests in primary elections as is sought in general elections, and that is to throw out illegal and fraudulent votes. It has been well said that the "contest of an election is a remedy given to the people by petition for redress, when their suffrages have been thwarted by fraud or mistake."

The weight of authority and the better reasoning is that the people by the Legislature or through an initiative act may recognize the existence of political parties, and within reasonable limits regulate the means by which

partisan voters should be protected in exercising individual preferences for party candidates, which is the general purpose of the primary election law of this State. 20 C. J., par. 110, p. 113; 9 R. C. L., p. 1072, *et seq.; State of Minn.* v. *Moore,* 59 L. R. A. (Minn.) 447; *State ex rel. Miller* v. *Flaherty* (N. D.), 41 L. R. A. (N. S.) 132; *Baer* v. *Gore,* (W. Va.), L. R. A., 1917 B, p. 723; *Waples* v. *Marrast* (Tex.), L. R. A. 1917 A, p. 253, and *Phillips* v. *Strassheim.* (Ill.), 22 L. R. A. (N. S.) 1135.

It is contended by counsel for Montgomery that the ruling of the circuit court should be upheld because the statute does not prohibit Republicans from voting in a primary election held by the Democratic party.

Under the authorities cited the constituted authorities of the political parties have exclusive jurisdiction as to the regularity of primary elections except as taken away by statute. The Legislature may or may not prescribe tests of the right of voters to vote at primary elections.

As we have already seen, the act under consideration recognizes organized political parties and provides that all primary elections for the nomination of county, district, and State officers shall be held on the same day. No one could logically assert that the framers of the act intended that any elector without any party belief whatever had the right to participate in said primaries because he might be a qualified elector within the meaning of our Constitution.

The act in question prescribes no tests for party affiliations. Therefore, the duly constituted authorities of the recognized political parties had a right to prescribe the tests for the voters at the primary elections to be held by such political parties. To hold otherwise would be to destroy the usefulness of the act and to render it unreasonable in its application or practical effect.

As bearing on the question we refer to *Rouse* v. *Thompson,* 81 N. E. 1109, where the Supreme Court of Illinois, in discussing statutory regulations for securing fair primary elections, said that if the independent voter

or voter affiliating with an opposition party can vote at the primary election of a party with which he has no political affiliation and thereby control the nomination of a party which he will vote against at the polls, the freedom of the primary election is destroyed. Again the court said:

"The object of holding a primary election by a political party is to select party candidates, and it is too plain for argument that no voter should be permitted to vote at the primary election of a political party unless he is a member of such party, and unless provision is made to prevent persons voting at a primary election for the candidates of a party who are not affiliated with such party, the whole scheme of nominating party candidates by a primary election would fail, because of being incapable of execution."

In *Logan* v. *Russell, supra,* the court said that the provisions of the statute under consideration should receive a liberal interpretation so as to effectuate the wholesome purposes intended by its framers.

In *McDaniel* v. *Ashworth,* 137 Ark. 280, in an election case, in discussing the interpretation of the statutes, the court said:

"The whole subject was reviewed in the case last cited, and the doctrine was made plain that the duty of the courts in interpretation of statutes was to endeavor to ascertain from the language used the true intention of the lawmakers, and when that intention was ascertained to disregard everything which was in conflict with that intention, and, if necessary, to omit words or substitute others so as to make the statute harmonize with the manifest will of the lawmakers."

It is contended that our primary law takes away the right of political parties to prescribe the tests of persons voting at primary elections held by such parties. Reliance is placed upon section 3778 of Crawford & Moses' Digest. It reads as follows:

"All laws or rules of political organizations holding primary elections providing for contest before political

conventions or committees other than the proceedings herein provided shall be of no further force or effect.''

The avowed purpose of this section is to take away from political parties the right to provide rules regulating contests. It has no relation whatever to the tests required of the voters at the primaries held by such parties, and does not purport to deal with that question. This view is borne out by section 3791 of Crawford & Moses' Digest, which makes it a misdemeanor for a person to vote in the primary of a party which the voter does not adhere to or affiliate with.

It is also insisted that the courts have no right to review the action of the duly constituted authorities of the party in allowing the Republicans to vote.

The act was passed for the purpose of conferring jurisdiction on the courts over contests and this makes the contest proceeding a judicial action, and it is no longer merely a political question to be settled within the party. To hold otherwise would destroy the very purpose of the act, and render it abortive. It is our duty to construe the act to advance the remedy provided by the act, rather than to render it futile or unavailing.

This brings us to a consideration of the rules of the Democratic party in force at the time the primary election was held on the 10th day of August, 1920. They provide that none but Democrats shall participate in said election and that a Democrat is defined to be one who supported the nominees of the Democratic party in the preceding general election, or was prevented from attending the election by unavoidable cause.

As we have already seen our primary law recognizes that there are different political parties in this State, and it is a matter of common knowledge that the Democratic and Republican parties are the two great rival parties, not only of this State, but throughout the United States. The word, ''Republican,'' therefore, has a well-defined meaning and indicates one who affiliates with the Republican party in contradistinction to the Democratic party, or any other political party. If a Republican

should quit his own party and join another one, he would no longer be called a Republican. Therefore, when counsel for Ferguson alleged that Republicans had been allowed to vote for Montgomery and offered to prove that fact, they used words which were well understood by the people and which conveyed the meaning that they were not entitled to vote at a Democratic primary election.

But it is insisted that the offer of proof in this respect, was not sufficiently definite. We can not agree with counsel in this contention. We quote from the record the following:

Q. Your name is A. J. Edwards?

A. Yes, sir.

Q. You live in Sprada Township?

A. Yes, sir.

Q. Did you vote in the primary election held on the 10th day of August?

A. Yes, sir.

Q. Mr. Edwards, what is your politics?

A. Republican. Black too.

Q. Did the judges challenge your vote, Mr. Edwards?

A. No, sir. Nothing was said to me about it.

The record further shows that the attorneys for Ferguson offered to show that the number of Republicans set out in his answer voted in the primary election and voted for Montgomery. In his answer Ferguson sets out the number of Republicans that were allowed to vote for Montgomery and the townships in which they voted.

The court not only sustained a demurrer to this part of the answer of Ferguson, but refused to allow him to make the proof just referred to. Therefore, we think the offered proof was sufficiently definite and that the court erred in refusing to allow it to be introduced in evidence.

We are also of the opinon that under our primary act Ferguson did not lose his right to object to the Republican votes because he did not challenge the voters at the polls. Such a course would have required him to have kept watchers at each polling precinct, and this would

have been too expensive and cumbersome. He might have pursued that course and have caused the judges to have thrown out these votes. It is sufficient to say that the adoption of such a course by him is not required by the statute as a prerequisite to his right to contest the election on that account.

It is insisted that the court erred in not throwing out the votes of Pittsburgh Township and in not allowing the parties to the contest to prove the number of votes in their favor in that township by parol evidence under the rule announced in *Williams* v. *Buchanan*, 86 Ark. 259, and cases cited, where the contest was under the general election law. The face of the returns shows that Montgomery received 183 votes and Ferguson 125 votes, or a majority of 58 votes for the contestee. The record shows that the ballots from his township were not numbered.

Section 3765 of Crawford & Moses' Digest, provides that the judges and clerks of the election should make a duplicate register of the names of each and all the electors in the order in which they present their ballots, placing opposite each name its number in the manner prescribed by sections 3797 to 3802 regulating general elections, which provide that every ballot shall be numbered in the order in which it shall be received and the number recorded by the election officers on the list of voters, opposite the name of the elector who presents the ballots. The object is to prevent fraud, and it is the duty of the election judges and clerks to carry out the provisions of the act in primary elections as well as in general elections. When the ballot is numbered in the order in which it is received and the number is recorded on the list of the voters, the number opposite the name of the voter on the list will also appear on the ballot, and thus there is an identification of the ballot voted by each elector. The neglect to perform this duty is an evidence of fraud under the primary election act, but it is not conclusive evidence of fraud, and it does not necessarily follow that for the failure to comply therewith the vote of the entire precinct should be thrown out. Conflicting views have

been expressed by the courts as to what circumstances will justify throwing out the entire vote of a township. Such a power necessarily belongs to whatever court has jurisdiction to pass upon the merits of a contested election case, and it is such a dangerous power that it should be exercised only in an extreme case, that is to say, a case where it is impossible to ascertain with reasonable certainty the true vote. McCrary on Elections, (4 ed.), section 523 and 20 C. J., par. 346, p. 249.

Section 3765 of the digest regulating primary elections also provides that each ballot shall be signed by the voter at the bottom thereof at a place which shall be provided for his signature, and that if the voter is unable to subscribe his name the same shall be signed by one of the judges and attested by all of said judges. This provision is also designed to prevent fraud and serves the same purpose as numbering the ballots as prescribed by the statute. Thus the framers of the act designed to establish a double check against fraud. Both provisions should be carried out by the judges and clerks of the primary election.

In the present case it does not appear from the record that the judges and clerks failed to require the voters to sign the ballots, and it does not appear from the record that their failure to number the ballots as required by the statute was the result of fraud. The signature of the voter served to identify the ballots, and under the circumstances disclosed in the record we do not think the court erred in not discarding the entire vote of the precinct.

Finally, it is insisted that the ouster section of the primary act is void because it is directed solely against the contestee or the defendant in the contest proceeding and brings the act within that class of statutes condemned generally as discriminatory and void. It is also claimed that, if not void, there can be no ouster of Montgomery under the statute because he was elected county judge at the general election in November, 1920, during the pendency of this appeal, and that the section does not apply

to him because he was the contestant or plaintiff in the case in the court below, and that the statute only applies to the contestee who is the defendant in the circuit court. Counsel also point to the fact that in this court the parties are designated by statute as appellant and appellee and that Ferguson is the appellant here. The section in question is 3776 of Crawford & Moses' Digest, and reads as follows:

"Should a proceeding under §§ 3772-3773, or a criminal prosecution under § 3774, be not determined finally until after the election, and the defendant in such proceeding is elected to the office as the nominee of the party, and it is determined that he was not entitled to the nomination, or the judgment contains a finding that he violated the laws, as provided in § 3774, then such judgment shall operate as an ouster from office, and the vacancy in it shall be filled as provided by law for filling vacancies in such office in case of death or resignation."

We think that the word "defendant" as used in the section was not intended to be used in its strictly technical sense, but that it should be given a broader interpretation so as to carry out the act instead of destroying or crippling its usefulness. This court has already declared that the act "should receive a liberal interpretation so as to effectuate the wholesome purposes intended by its framers."

Again in *McDaniel* v. *Ashworth, supra,* in construing an act providing for the election of directors for the St. Francis Levee District, the court said that it was "the plain duty of the court, in the construction of statutes, to arrive at the legislative will and to sweep aside all obstacles in the way of accomplishing it." When we consider the object and purposes of the statute, it is plain that the word, "defendant" was used to denote the party who defends the suit when it was finally determined whether it was in the circuit court or in this court.

The section provides in brief that, should a contest proceeding or a criminal prosecution be not finally determined until after the general election, and the defend-

ant in the proceeding is elected as the nominee of the party, and it is determined that he was not entitled to the nomination, or that he violated the law, then such judgment should operate as an ouster from office. The object was to prevent one illegally nominated and thereby securing an election at the general election from holding the office during the term provided by law or a material portion thereof, and thereby rendering abortive the contest proceeding.

In *Duntan* v. *McCook,* 94 N. W. 942, the Supreme Court of Iowa had under consideration a statute as follows:

"A defendant against whom a judgment has been rendered, or any person interested therein, having matter of discharge which has arisen since the judgment, may upon motion, in a summary way, have the same discharged, either in whole or in part, according to the circumstances," and it was there contended that the word "defendant" was used in its strict technical sense. But the court held that the word might refer to the plaintiff as well as the defendant, and said:

"By 'defendant' is meant the party against whom the judgment or decree has been entered, and not necessarily the defendant in the suit; and the term 'judgment' is employed in the statutory sense, being any 'final adjudication of the rights of the parties in an action.' "

In *Thayer, Petitioner,* 11 R. I., p. 160, Amy Thayer sought to be discharged from imprisonment on an execution for costs awarded against her in an action of trover in which she was plaintiff and Mary M. Thayer was defendant. The court had under consideration the construction of a statute providing for an execution against the body, which was served by arresting Amy Thayer, the plaintiff, and said that "no reason occurs to us why plaintiff, whatever be the nature of the action, against whom judgment has been rendered for costs should be dealt with differently than if the judgment were for a debt." We quote from the opinion the following:

"It will be perceived, by reference to the section mentioned, that no provision in terms is made for an execution against the body of a plaintiff, but only for an execution against the body of a defendant. The respondent's counsel suggests that the word 'defendant' should be construed to mean the defendant in execution, and not merely the defendant in suit, and, therefore, to include a plaintiff against whom a judgment has been obtained by a defendant. We think the section susceptible of this construction, and are led to adopt it, because there is no other authority for an execution against the body of a plaintiff; and we can not suppose that the General Assembly did not intend to give a defendant, who has recovered judgment for costs, or for a balance due him upon a plea in set-off against a plaintiff, the same process to compel the payment of his costs or debt which the plaintiff, if successful, would have had against the defendant."

For the error in refusing to admit the testimony with regard to the Republican votes alleged to have been cast for Montgomery, the judgment will be reversed and the cause remanded for a new trial.

McCULLOCH, C. J. (dissenting). My dissent is based on the ground that the majority have given an erroneous interpretation of what is termed the ouster provision (Crawford & Moses' Digest, § 3776) and that the appeal should be dismissed for the reason that the statute does not authorize the ouster of appellee from the office to which he was elected.

The statute provides, in substance, that if the contest over a nomination, or a criminal prosecution for corrupt practices in the election, be not finally determined until after the general election "and the defendant in the proceeding is elected to the office as the nominee of the party, and it is determined that he was not entitled to the nomination, or the judgment contains a finding that he violated the laws, * * * then such judgment shall operate as an ouster from office, and the vacancy shall be filled as provided by law."

Now, I readily concede that, if it can be seen from a reasonable interpretation of the statute that its framers really meant to provide for ouster under the state of facts existing, as in the present case, the court would be justified in discarding the precise word or words used or in disregarding the literal meaning of particular words used, so as to give effect to the obvious meaning of the framers of the statute. But the language used does not indicate, with any reasonable degree of certainty, that it was meant to provide for an ouster in any instance except where the defendant in the contest—the contestee—has been elected to the office as the party nominee and afterward loses the nomination by the final judgment of the court. Nor could the language be changed so as to make a provision to fit the present case by a mere substitution of some other word for the word "defendant" used in the statute. The appellee was not, and is not, in any sense a defendant in the contest, and in order to provide for an ouster after his election to office it would have to be expressed in language sufficient to declare that any party to the contest who, before the final determination of the contest, is elected to office, shall be ousted if the final decision be against him. The word "defendant," as used in the statute, means what its ordinary definition implies. It does not include a plaintiff in an action who is the appellee on appeal of the cause to a higher court. Such meaning can not reasonably be attributed to the uses of the word "defendant," for the ouster statute applies also to a "defendant" in a criminal prosecution, and one who appeals from a judgment of conviction would not be a defendant within the meaning of the statute as now interpreted by the majority, who hold that the appellee on the appeal is the "defendant" within the meaning of this statute.

In order to see what was in the minds of the framers of this section of the statute, it should be considered in connection with the preceding section, and when the two sections are thus considered it becomes clear, I think, that

the framers of the statute used the words "successful candidate" in one section and "defendant" in the other, synonymously as referring to the candidate who has been successful in the primary election, and they do not refer to a plaintiff or contestant in an action who is adjudged to be the rightful nominee.

This is merely a failure on the part of the framers of the statute to provide for such a contingency as is presented in the present case. However desirable it may appear that such a contingency should be provided for, the courts are not authorized to supply the omission.

It is not essential to the validity of this feature of the statute that it should be held to be applicable to an appellee. The lawmakers had the power to create the remedy and prescribe its terms and extent. A contestant for office can not complain if he finds himself without a remedy under given circumstances. The statute does not discriminate against individuals or classes. It merely provides that, if a contestee is elected to office, he must give up the office if he finally loses the contest. The fact that the statute does not provide, reciprocally, that the contestant must also give up the office if he finally loses the contest does not render the statute void.

Such being my interpretation of the statute, I think that the appeal of appellant shold be dismissed for the reason that the election of appellee has brought the contest to an end, and the decision of this court as to the correctness of the rulings of the trial court, involves moot questions.

I am also unable to agree with the majority in the interpretation of the section of the statute (§ 3772) in regard to the supporting affidavits. The statute does not require that the affidavits must be made by citizens or electors of any particular party, nor that they must have voted in the primary. If they are electors of the county, they are qualified.

Neither do I agree to that part of the opinion holding that the complaint can be amended to embrace

charges of fraud in other townships. The proceeding is purely statutory, and is not a civil action within the meaning of our statute on amendments to pleadings. *Davis v. Moon,* 70 Ark. 240. The affidavits of ten citizens must, under this statute, support the charges in the complaint which can not, after the expiration of the time specified for filing it, be amended to embrace other charges. *Russell v. Logan,* 136 Ark. 217.

I agree with the majority that the trial court erred in its ruling concerning the right of either party to the contest to purge the ballot of the votes of persons who were not members of the Democratic party. But for the fact that the right to prosecute an appeal has passed away by the election of appellee to the office, this erroneous ruling of the court would call for a reversal.