The Honorable Mike Todd State Senator 333 West Court Street Paragould, Arkansas 72450
Dear Senator Todd:
This opinion is being issued in response to your recent questions regarding municipal housing authorities.[1] You have presented several questions, which have been restated as follows:
 (1) If a commissioner to a housing authority board has been properly appointed and confirmed by the governing body of the municipality, must his reappointment as a commissioner be confirmed by the municipality's governing body?
 (2) Since the law that was in existence prior to 1989 did not provide for confirmation of a reappointment to the board, is the reappointment of a commissioner who was originally appointed to the board prior to 1989 required to be confirmed by the municipality's governing body?
 (3) What is the effect of the failure of the board to file a certificate of reappointment with the governing body of the municipality?
 (4) What is the effect of a failure of the governing body to take action on a notice of reappointment?
 (5) If notice of the current commissioners' reappointment was not filed and the municipality's governing body never acted to confirm or reject the reappointments, are the current commissioners legally serving pursuant to A.C.A. § 14-169-208(c)(3)?
 (6) Until a new appointment is made and confirmed as required by the Housing Authority Act, can the "hold-over" commissioner whose reappointment was never properly confirmed continue to conduct business on behalf of the housing authority in the same manner as if the reappointment had been properly confirmed?
 (7) If a commissioner meets all qualifications of the Housing Authority Act at the time of his initial appointment and confirmation, can he continue to serve as a commissioner even though, after his appointment and confirmation, his place of residence changes to a point beyond ten miles from the territorial boundaries of the city?
 (8) Must a commissioner be removed from office because of a change in his residence which places him beyond the area of operation of the housing authority?
 (9) If a commissioner met the residency requirement upon his initial appointment, can he be reappointed to the board if his residency changes so as to place him outside the area of operation of the housing authority?
RESPONSE
Question 1 — If a commissioner to a housing authority board has beenproperly appointed and confirmed by the governing body of themunicipality, must his reappointment as a commissioner be confirmed bythe municipality's governing body?
It is my opinion that the reappointment of a commissioner to a housing authority board must be confirmed by the municipality's governing body. Confirmations of reappointments are explicitly required by the provisions of A.C.A. § 14-169-208(c)(2)(B)(i), which states:
 When the term of office of a commissioner expires or other vacancy occurs in the commissioners of an authority, the commissioners shall appoint a successor to fill the vacancy, subject to confirmation by the municipal or county governing body.
A.C.A. § 14-169-208(v)(2)(B)(i).
You expressed concern about a possible conflict between the above-quoted provision and the emergency clause of the act in which this legislation first appeared. You interpret the emergency clause as indicating an intent "to remove the governing bodies from the appointment process." However, the language of the emergency clause indicates only an intent to clarify that commissioners should have the responsibility of designating their successors. The emergency clause does not address the question of confirmation. I therefore find no conflict between the language of the statute and the intent expressed by the emergency clause. Even if such a conflict did exist, it would be inappropriate to consider the emergency clause in the absence of an ambiguity in the language of the statute.See Heath v. Westark Poultry Processing Corp., 259 Ark. 141,531 S.W.2d 953 (1976); Roscoe v. Water and Sewer Improvement District No. 1,216 Ark. 109, 224 S.W.2d 356 (1949). In this instance, no such ambiguity exists. The statute is quite clear in its requirement that reappointments be confirmed by the municipality's governing body.
Question 2 — Since the law that was in existence prior to 1989 did notprovide for confirmation of a reappointment to the board, is thereappointment of a commissioner who was originally appointed to the boardprior to 1989 required to be confirmed by the municipality's governingbody?
It is my opinion that the reappointment of a commissioner who was originally appointed prior to 1989 must be confirmed by the municipality's governing body. Although the commissioner's appointment was governed by the law that was in existence prior to 1989, his reappointment is not; rather, the reappointment will be governed by the law that is in existence at the time of the reappointment. If the reappointment takes place after 1989, it must be confirmed by the municipality's governing body. The Housing Authority Act does not provide for any different reappointment process for commissioners who were originally appointed prior to the 1989 amendment of the act. That is, it provides for no exemptions from the confirmation requirement.
Question 3 — What is the effect of the failure of the board to file acertificate of reappointment with the governing body of themunicipality?
It is my opinion that the failure of the board to file a certificate of reappointment does not affect the validity of any reappointment. The language of the Housing Authority Act indicates that the purpose of the filing of the certificate of reappointment is to provide evidence of
appointments and reappointments. Section (d)(2) of the Act states: "The certificate shall be conclusive evidence of the due and proper appointment of the commissioner." A.C.A. § 14-169-208(d)(2). Since the certificate is "evidence of" due and proper appointment (or reappointment), it thus is not, in itself, a part of due and proper appointment (or reappointment).
I must therefore conclude that a failure of the board to file a certificate of reappointment does not affect the validity of the reappointment. Rather, the failure simply creates a lack of conclusive evidence of the reappointment.
Question 4 — What is the effect of a failure of the governing body totake action on a notice of reappointment?
This question is explicitly governed by A.C.A. § 14-169-208(c)(2)(C)(i), which states:
 If the governing body fails to confirm or reject the commissioner's appointment within forty-five (45) calendar days after receiving written notice of the appointment, the appointment shall be deemed confirmed and the governing body shall have no power to act on the appointment thereafter.
A.C.A. § 14-169-208(c)(2)(C)(i).
On the basis of the above-quoted language, I conclude that any appointment (or reappointment) upon which the governing body fails to act within forty-five days is deemed to have been confirmed.
Question 5 — If notices of the current commissioners' reappointments werenot filed and the municipality's governing body never acted to confirm orreject the reappointments, are the current commissioners legally servingpursuant to A.C.A. § 14-169-208(c)(3)?
It is my opinion that the current reappointed commissioners are legally serving pursuant to A.C.A. § 14-169-208(c)(3), which states: "A commissioner shall hold office until his successor has been appointed and has qualified." Your question implies that all current commissioners served a term prior to the one in which they are currently serving. If indeed that is the case, they are entitled to "hold over" from that previous term until they (or some other successor) is duly appointed (which would include confirmation).
If any of the current commissioners did not serve a prior term, those commissioners are not legally serving. Rather, the commissioners who previously held the positions to which those new commissioners were appointed (but not confirmed) would be entitled to hold over, pursuant to A.C.A. § 14-169-208(c)(3), in those positions until new commissioners are duly confirmed.
Question 6 — Until a new appointment is made and confirmed as required bythe Housing Authority Act, can the "hold-over" commissioners whosereappointment was never properly confirmed continue to conduct businesson behalf of the housing authority in the same manner as if thereappointments had been properly confirmed?
It is my opinion that "hold over" commissioners may continue to conduct business on behalf of the housing authority as though their reappointments had been properly confirmed. The "hold over" provision appears to have been enacted for the very purpose of allowing a continuation of business pending the appointment and confirmation of new commissioners. Indeed, any other reading of the hold over provision would render it meaningless. The Arkansas Supreme Court has held that it is inappropriate to interpret legislation in such a way as to assume that the General Assembly enacted vain or meaningless law. See Death andPermanent Disability Trust Fund v. Whirlpool Corp., 39 Ark. App. 62,837 S.W.2d 293 (1992).
For this reason, I must conclude that "hold over" commissioners may conduct business as though their reappointments had been duly confirmed.
Question 7 — If a commissioner meets all qualifications of the HousingAuthority Act at the time of his initial appointment and confirmation,can he continue to serve as a commissioner even though, after hisappointment and confirmation, his place of residence changes to a pointbeyond ten miles from the territorial boundaries of the city?
It is my opinion that a commissioner who was qualified at the time of his appointment and confirmation, but who later changes his residence so as to become disqualified for the office, can continue to serve as a de facto commissioner until he is removed by order of a court, or until a qualified successor is duly appointed and confirmed (whichever event occurs first). The change in his qualifications does not create an automatic vacancy in the office. See May v. Edwards, 258 Ark. 871,529 S.W.2d 647 (1975); Stafford v. Cook, 159 Ark. 438, 252 S.W. 597 (1923).
The Court has defined a de facto officer as "one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though having no right in fact." Brownv. Anderson, 210 Ark. 970, 976, 198 S.W.2d 188 (1946). A commissioner whose residence has changed so as to render him disqualified to serve as a commissioner, but who continues to serve, would come within the court's definition of a de facto officer.[2] Arkansas law recognizes the official acts of de facto officers as valid. See Brown v. Anderson,210 Ark. 970, 198 S.W.2d 188 (1946). However, Arkansas law also provides for a right of action to remove ineligible officers from office. (See
response to Question 8).
I therefore conclude that although the commissioner would not meet the legal qualifications for service as a commissioner after his change of residence, he could continue to serve as a de facto officer until such time as a legal action for his removal is carried out by court order, or until a qualified successor is duly appointed and confirmed.
Question 8 — Must a commissioner be removed from office because of achange in his residence which places him beyond the area of operation ofthe housing authority?
It is my opinion that a commissioner whose change in residence renders him ineligible for service as a commissioner is subject to removal pursuant to Arkansas' civil usurpation statute (A.C.A. § 16-118-105).
As explained in response to Question 7, such a commissioner is a de facto officer. The Arkansas Supreme Court has held that de facto officers constitute usurpers within the meaning of the usurpation statute. InSitton v. Burnett, 216 Ark. 574, 226 S.W.2d 544 (1950), the court stated:
 This court in Stephens v. Campbell, 67 Ark. 484, 55 S.W. 856, in construing the effect of the above statute, [the usurpation statute] announced the controlling rule as follows: "Under the statutes of this State, an officer de facto, without legal title to the office, is a usurper (Lambert v. Gallagher, 28 Ark. 451; Wheat v. Smith, 50 Ark. 266-273, 7 S.W. 161), and can be removed from office by `an action by proceedings at law instituted against him, either by the State or the party entitled to the office.' . . ."
Sitton, 216 Ark. at 577. Accord, May v. Edwards, 258 Ark. 871,529 S.W.2d 647 (1975).
The usurpation statute states:
 Whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise.
A.C.A. § 16-118-105(b)(1).
Although the statute does not define the terms "office" and "franchise" as used therein, the Arkansas Supreme Court has recognized the applicability of the statute to various municipal officials. See, e.g.,Beshear v. Clark, 292 Ark. 47, 728 S.W.2d 165 (1987) (municipal judge);May v. Edwards, 258 Ark. 871, 529 S.W.2d 647 (1975) (alderman); Scott v.McCoy, 212 Ark. 574, 206 S.W.2d 440 (1947) (city attorney). Moreover, the language of the statute is broad enough to indicate a wide applicability. More specifically, the statute makes provision for actions for the removal of usurpers from "county offices or franchises," and for actions for the removal of usurpers from "other than county offices or franchises." A.C.A. § 16-118-105(b)(3)(A) (B). These provisions appear to contemplate application of the statute to all manner of offices and franchises — both county offices and franchises, and all other offices and franchises. For this reason, I conclude that the usurpation statute is applicable to housing authority commissioners.
It is therefore my opinion that because the commissioner in question is a de facto officer, and is therefore a usurper, he is subject to removal from office under the above-quoted usurpation statute.[3]
Question 9 — If a commissioner met the residency requirement upon hisinitial appointment, can he be reappointed to the board if his residencychanges so as to place him outside the area of operation of the housingauthority?
It is my opinion that a commissioner who does not meet the residency requirement may not be reappointed to the board, despite the fact that he met the residency requirement at the time of his original appointment. The Housing Authority Act does not make provision for exceptions to the residency requirement in instances of reappointment. That is, the qualifications for reappointment are the same as those for appointment. Therefore, the applicable qualifications are those that exist at the time of the particular appointment or reappointment in question.
For this reason, I conclude that a commissioner who changes his residence in such a way that he no longer meets the residency requirement for service on the board is no longer qualified to serve on the board and may not be reappointed.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] In your correspondence, you indicate that you currently serve as a housing authority commissioner. You have not inquired as to the legality of serving as a commissioner while also serving as a state senator. We therefore have not analyzed that issue. Please be aware, however, that your situation may be impacted by Article 5, § 10 of the Arkansas Constitution, by other constitutional provisions, or by the statutory and/or common law components of the law of dual office holding.
[2] It should be noted that in Lanier v. Norfleet, 156 Ark. 216,245 S.W. 498 (1922), the court held that a notary public who permanently changed his residence so as to become disqualified for the office of notary was neither a de jure nor a de facto officer. The facts of Lanier
indicate that the notary did not continue to serve. He therefore did not come within the court's definition of a de facto officer. For this reason, Lanier is distinguishable from a situation in which an officer continues to serve despite the change of residence.
[3] The Arkansas Supreme Court has held that a loss of qualification by an officer who was qualified at the time he took office does not create an automatic vacancy in the office. See May v. Edwards, 258 Ark. 871,529 S.W.2d 647 (1975); Stafford v. Cook, 159 Ark. 438, 252 S.W. 597 (1923). Therefore, legal action must be initiated in order to remove the officer.