LOGAN *v.* RUSSELL.

Opinion delivered October 21, 1918.

1. ELECTIONS—PRIMARY NOMINATION—CONTESTS.—Under Acts 1917,
   p. 2287, § 12, which provides that the complaint in a proceeding
   to contest the certification of a primary nomination "shall be sup-
   ported by the affidavits of at least ten reputable citizens, and shall
   be filed within ten days of the certification complained of," the
   affidavits are jurisdictional, and the complaint and affidavits must
   be filed within the time specified.

2. ELECTIONS—CONTEST OF NOMINATION.—Under the above section
   the affidavits of the ten reputable citizens need not be separate but
   may be combined into one affidavit, and may be upon belief of the
   affiants merely, without setting forth the facts upon which their
   belief is based.

Appeal from Johnson Circuit Court; *A. B. Priddy,*
Judge; affirmed.

*Atkinson & Brock* and *J. J. Montgomery,* for appel-
lants.

1. The supporting affidavits were filed within the time and duly verified before the case was called for trial. The complaint stated a good cause of action, and if the facts stated are true there can be no question of contestant's right to the nomination. It was error to sustain the demurrer. Acts 1917, Vol. 2, p. 2296; Kirby's Digest, §§ 6120, 5976, 6145; 42 Ark. 59; 94 *Id*. 345. A strict compliance with the statute was not necessary.

2. The statute should be liberally construed to effect the remedy. Mere defects or omissions should be allowed to be cured by amendment. The people are primarily and principally interested. McCrary on Elec. (4 Ed.) § 440, 454; 65 Pa. St. 20; 121 S. W. 460; 35 *Id*. 1001; 78 Ill. 170; 5 S. E. 704; 65 Pa. St. 20; 8 Stand. Enc. Proc. 78, § 8 and 65, note 88; 1 Brewst. 26; 6 Wyo. 91; 18 Cent. Dig. 446, § 277 (1) ; 12 S. E. 783. Leave to amend should have been granted.

3. The wrongs were clear and flagrant. 41 Ark. 111.

*G. O. Patterson, Jesse Reynolds* and *Carmichael & Brooks,* for appellee.

1. The complaint is defective. The presumption is that the returns were properly made and the votes cast as returned by sworn officers. McCrary on Elections (4 Ed.) § 569. The ordinary rules of evidence apply to contested elections. *Ib.* § 459. The allegations are not sufficient to show that the result would have been changed. 39 Ark. 549. 32 *Id*. 553; 43 S. E. 368.

2. The complaint was not verified by affidavits as required by law. Acts 1917, 2296, § 12. Its provisions are mandatory. McCrary on Elections, (4 Ed.) § 130; 111 Ark. 388; 70 *Id*. 240; 80 *Id*. 369.

3. The complaint does not state that the illegal votes cast were for defendant, nor that they changed the result.

McCULLOCH, C. J. Appellant and appellee were rival candidates in Johnson County for the nomination of the Democratic party for the office of county clerk at a primary election held on the first Tuesday in May, 1918, and appellee was duly certified as the successful candi-

date. Appellant instituted a contest in the circuit court of Johnson County. He filed a complaint setting forth his grounds of contest, and also filed therewith an unsworn statement signed by ten citizens of the county, which was in the following form:

"We, the undersigned, state that we are reputable citizens of Johnson County, Arkansas, and that we believe the statements of the foregoing complaint to be true."

The complaint and the accompanying statement of the ten citizens were filed in the office of the clerk of the court within ten days after the result of the primary election was duly certified, but the statement of said citizens was not sworn to until after the expiration of that time. It appears in the record that one of the names as originally signed was erased by having a line drawn through it, and that another citizen subsequently signed the petition in the place of the one whose name was thus erased. There was a demurrer to the complaint on various grounds, among others, that the complaint was not supported by affidavits as required by statute. The court sustained the demurrer and dismissed the complaint.

The proceedings were instituted under the statute adopted by a vote of the people at the election of 1916, regulating primary elections. See Acts 1917, p. 2287. That portion of the statute which is material to the controversy now before us reads as follows:

"Section 12. A right of action is hereby conferred on any candidate to contest the certification of nomination or the certification of vote as made by the county central committee. The action shall be brought in the circuit court. * * * The complaint shall be supported by the affidavits of at least ten reputable citizens, and shall be filed within ten days of the certification complained of, if the complaint is against the certification in one county, and within twenty days if against the certification in more than one county. The complaint shall be answered within ten days. * * *"

It is conceded that the court based its ruling dismissing the complaint on the ground that supporting affidavits were not filed with the complaint within ten days after the certification of the nomination. We pretermit any discussion of the question whether or not this matter could properly be raised by demurrer, as the court could, and doubtless did, treat the demurrer on that ground as a motion to strike out the complaint, and the court was correct in its decision that the filing· of the supporting affidavits within the time mentioned was essential to its jurisdiction. Then the particular form in which the question was raised is not important.

It is also contended, in support of the court's ruling in sustaining the demurrer, that the complaint did not state facts necessary to show grounds of the contest, but we also pass that question and go at once to a decision of the question upon which it is said the court based its judgment.

The record shows on its face that supporting affidavits were not filed within ten days from the date of the certification of appellee's nomination, and the question is therefore squarely presented whether or not that was essential to the court's jurisdiction in the contest proceedings. We think that the filing of the affidavits was jurisdictional, and that the jurisdiction of the court could not be established by filing the affidavits after the expiration of the time specified in the statute. The statute very clearly means that the supporting affidavits must be filed within ten days after the certification of the nomination. The language is somewhat peculiar in that the reference to the supporting affidavits precedes the specification of the time for filing the complaint, but it is manifest, we think, that the framers of the statute meant to require the supporting affidavits to accompany the complaint, and that the complaint as thus supported must be filed within the time specified. The statute does not say that the cause of action shall be supported by affidavits, but that the complaint itself must be thus supported, and this means, we think, that the complaint when filed must be

supported by the affidavits, and that both must be filed within the time specified.

We do not agree with counsel for appellee that the statute necessarily requires separate affidavits of ten citizens, but we think there is no objection to combining all the affidavits into one. Nor does the statute require the affiants to state the facts upon which their support of the complaint rests. The language is somewhat indefinite, and we can not read into it a requirement that the facts must be stated, when all that the statute specifies is that the complaint "shall be supported by the affidavits of at least ten reputable citizens." We are of the opinion that affidavits upon belief of the affiants is sufficient.

The contest proceedings provided by this statute do not constitute civil actions within the meaning of our Code of Civil Practice. It has been so decided by this court with reference to election contests authorized under another statute. In the case of *Davis* v. *Moore*, 70 Ark. 240, it was expressly decided that "election contests are special proceedings, and not civil actions under the Code, and everything must be done therein according to the statute regulating such proceedings, where such statute exists." That decision was followed in others holding that judgments for costs could not be rendered in election contests for the reason that the statute did not authorize it, and that such proceedings do not constitute civil actions within the meaning of the Code. *Rhodes* v. *Driver*, 69 Ark. 606; *Williams* v. *Buchanan*, 86 Ark. 259; *Buchanan* v. *Parham*, 95 Ark. 81.

The provisions of the statute under consideration should receive a liberal interpretation so as to effectuate the wholesome purposes intended by its framers, but, the proceedings authorized thereunder being special, we can not, without doing violence to well-settled rules of interpretation, extend those provisions beyond the plain meaning of the language employed. There is, we think, no escape from the conclusion that the language of the statute with reference to the time of filing the complaint is mandatory, and not merely directory, and that the same

requirement applies to the accompanying affidavits. The plain purpose of the framers of the statute was to require expedition in the commencement and preparation of contests of primary elections, and we do not feel at liberty to disregard the language of the statute or lessen its binding effect by declaring it to be merely directory.

Our conclusion, therefore, is that the trial court was correct in holding that there was a lack of jurisdiction because the complaint, properly supported, was not filed within the time prescribed by statute.

Judgment affirmed.

SMITH, J., (dissenting). The history of the enactment of the primary election law is so recent and is so well known that the courts can not be oblivious to that history. A convention of the dominant party declared that a necessity existed for such legislation and appointed a commission to prepare a bill for an act to remedy the evil which had moved the convention to action. The convention itself named a commission of lawyers to prepare the bill, and the commission thus constituted was composed of a number of leading lawyers of the State. The bill was prepared and submitted to the ensuing session of the General Assembly, where it failed of passage. Thereupon, the people in their sovereign capacity as lawmakers enacted the bill into a law by their own vote at the first election held thereafter.

This act has now received its first practical application in the courts, and has failed to function. The first case brought under its provisions has been disposed of on demurrer because of the construction given it.

Decisions of this court are cited in the majority opinion to the effect that election contests are special proceedings, and not civil actions under the Code. Such is the law, and a law not peculiar to this State. An election contest in which the election itself is directly attacked to the end that it may be annulled, or the certificate of election cancelled and another certificate issued, is purely

a statutory proceeding unknown to the common law, and, in the absence of a statute, no remedy to directly attack the election exists. 8 Standard Enc. of Procedure, 10.

The right to contest an election being one of statutory creation, the contest must conform to the statute which authorizes it. There is nothing peculiar about our election law in that respect. All the States, so far as I am advised, not only have election laws, but have provisions in these laws for contesting elections held under them; and while these contests must be conducted in the manner provided in the laws themselves, yet the provisions of the statutes providing for contests are held to be remedial, and like all remedial statutes should be liberally construed to effectuate the beneficient purposes which prompted the creation of the remedy. So far as I am advised, it is so held universally. The doctrine is expressly recognized by the majority in the instant case, but, unfortunately, in my opinion, there is a failure to apply the doctrine announced. It is stated by the majority that the language contained is somewhat peculiar, and it is just here that opportunity is afforded to apply the doctrine just stated.

Now it does appear that a straight line is drawn through one of the ten names signed to the complaint, but it nowhere appears how, or when, or by whom, or for what purpose, this line was drawn. The complaint was not sworn to within ten days of the certification of the election, but it was sworn to as soon as that omission was discovered and before any other pleading or paper of any kind was filed in the case.

When the section of the statute is read as a whole, what does it mean? It gives the right to contest a party nomination for a political office. It was not thought wise to confer this right because the candidate alone felt aggrieved, but it was required that the complaint should be supported by the affidavit of at least ten reputable citizens. Expedition was regarded as essential, and it was provided that the complaint should be filed within ten days. The contest is begun by the filing of the complaint,

and the complaint must be filed within ten days, but will it be contended on that account that the complaint can not be amended in any respect thereafter?

The jurisdictional requirement is the filing of a complaint within ten days. Its verification and amendment and progress to a final adjudication are matters of procedure, and not of jurisdiction.

The case of *Nelms* v. *Vaughan*, 5 S. E. 704, was a proceeding to contest an election under a statute which provided that a complaint filed for that purpose "shall not be valid or regarded by the court unless the same shall have been filed within ten days after an election in the clerk's office of the proper court." There was a petition for a writ of prohibition on the ground that the petition was not subscribed to by the two affiants, as required by law, and, in stating the contention of the parties who had applied for the writ, the Supreme Court of Appeals of Virginia said: "But as the law provides that the returns of such elections shall be subject to the judgment of the said court upon the complaint of fifteen or more of the qualified voters of the county of an undue election and false return, and provides that two of these shall take and subscribe an oath or affirmation, and the oath in this case does not appear to be subscribed, it is claimed that the circuit court has no jurisdiction to hear the complaint. * * *" Disposing of this contention, the court said: "The policy of the Legislature was to provide in such cases a cheap and speedy mode of contesting an election upon its merits, on the complaint of qualified voters of an undue election and false return; that the law is remedial, and must be so considered and construed as most effectually to meet the beneficial end in view, and to prevent a failure of the remedy. It is true that this statute does in terms provide that the oath in question shall be subscribed as well as taken, and that in this case, while the notary does certify that the oath has been both subscribed and taken, the names do not appear to be there written, and the circuit court, having directed the two named qualified voters who had subscribed the complaint,

and whose names are inserted in the body of the oath, to now subscribe the same so as to amend where the defect appears, the writ of prohibition is applied for to restrain the said circuit court from exceeding its jurisdiction by so amending the oath. The law directs the form of these proceedings, and there is no doubt that the intention of the act is that these forms shall be substantially complied with, but there is nothing in the act to indicate the intention that every departure from the letter of the act shall vitiate the proceedings, and oust the court and every court from applying the remedy provided by this statute; and it is reasonable to infer that, if such intent had existed, it would have been manifested in the act, for the act does provide as to the time of filing the complaint that, if it is not filed within ten days, it shall not be valid or regarded by the court, thus providing those negative words by which the legislative intent is made plain. We are authorized to regard the directions as to form as merely directory, as there is no intimation that they must be done or all will be vitiated, or else no proceeding shall be further had.''

In the case of *Phillips* v. *Ratliff,* 121 S. W. 460, the Court of Appeals of Kentucky had before it an election contest, in which the contention was made that the circuit court should have sustained a motion to dismiss the contest because of the alleged failure of the contestant to verify his petition. In disposing of that contention, the court said: ''The motion was properly overruled, as it was made to appear by the affidavits of appellee that the original petition which was later lost had been verified by appellee. Besides, it appears from the record that appellant's answer was filed before complaint of appellee's failure to verify the petition was made. This being the case, he waived the right to compel a verification of the petition. And, had the objection to the want of verification been made in time, the court should not have dismissed the petition without first giving appellee time and opportunity to verify it.''

The case of *Nash* v. *Craig,* 35 S. W. 1001, was a case decided by the Supreme Court of Missouri under a statute which provides that no election of any county officer "shall be contested unless the notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted," and that "the notice shall specify the grounds upon which the contestant intends to rely, and, if objection be made to the qualification of any voters, the names of such voters and the objection shall be stated therein." There was a motion to dismiss this contest on the ground that the statute had not been complied with; the court, after stating that proceedings to contest elections are statutory and special and that jurisdiction of the subject-matter can only be acquired in the manner prescribed, disposed of the contention by saying: "It has been uniformly ruled that statutes governing elections should be given a liberal construction, whenever they will admit of it; and the same rule should be applied to the pleadings in order that substantial justice may be done, not only to the contesting parties, but to the public." And the opinion quoted the following statements of law from McCrary on Elections, section 406: "In the absence of any statute authorizing amendments, the court trying a case of contested election may, under its general common law power, permit such a petition to be amended; and an amendment ought to be allowed wherever the court, in the exercise of a sound discretion, shall be of the opinion that the ends of justice will be thereby promoted." And the court held that a notice might be amended to state more explicitly the grounds of the contest.

We think that, when the primary election law has been liberally construed as all such statutes should be construed, only the filing of the complaint should be held to be jurisdictional, and that its verification should have been subsequently permitted, just as any other amendment should have been permitted which was reasonably necessary to meet the ends of justice; the court exercising

its discretion of course in determining whether such application had been seasonably made.

I therefore dissent, and am authorized to say that Mr. Justice WOOD concurs in the views here expressed.