KIRK *v.* HARTLIEB.

4-4553

Opinion delivered October 26, 1936.

*W. A. Leach* and *Emmet Vaughan,* for appellant.

*A. G. Meehan, J. D. Thweatt* and *Jno. W. Moncrief,* for appellee.

SMITH, J. Appellant sought by this proceeding to contest the nomination of Raymond Hartlieb as the democratic candidate for the office of assessor of Prairie county. From a judgment dismissing the complaint is this appeal.

An answer and demurrer was filed, which alleged the insufficiency of the complaint to state a cause of action in numerous respects, and, among others, the following grounds: (1) That neither the original complaint nor the amendment thereto was supported by the affidavit of ten electors; and (2) that no such affidavit was ever filed.

The court did not specifically rule upon the question whether the affidavit had ever been properly made, and, if so, whether it had been filed. The demurrer was made a part of the answer, and a motion was made to strike the demurrer from the answer, which the court overruled. Testimony was heard as to whether the affidavit had been properly made and filed, after which hearing the complaint was dismissed.

It does not appear that the complaint lacks allegations which have been held essential to constitute a sufficient complaint not subject to demurrer; and we think

also that the undisputed testimony shows that the affidavit required by law was not properly made.

Counsel for appellant—the contestant—testified that on Monday, August 17, 1936, he prepared an amendment to the original complaint which he had filed the preceding Saturday, August 15. At the same time he prepared the supporting affidavit to be made by the electors. He himself procured the signatures of certain persons, and then gave the affidavit to John Kirk, appellant's father, to secure other signatures. Asked what Mr. Kirk had done with the blank affidavit appellant's counsel answered: "He circulated it over town." He was asked: "After this he delivered it to Mr. Rogers (the circuit clerk) at Des Arc?" He answered: "I don't know." Upon his cross-examination he testified as follows: "Q. You got these names, together with Mr. Kirk—12 or 14 names and after the names were obtained, Mr. Kirk took the paper, bearing the signatures, to Mr. Rogers, who has authority to administer the oath and then you had him attach his signature and seal to it? A. I don't know what happened with reference to that. Q. You weren't present at that time? A. No, sir. Q. You do know, that when you first saw it, and after you had obtained the three signatures there in the bank, there were enough names on it to have Mr. Rogers sign it and file it and you brought it down here and filed it? A. Yes, sir. Q. You know that you had enough names on it to have Mr. Rogers sign it? A. Yes, sir. Q. After Mr. Kirk secured a number of names and the names that you got, then he took it to Mr. Rogers to sign it? A. It may be that he took it to him, I don't remember about that. Q. These people had already signed the affidavit before it was taken to Mr. Rogers to have him sign it, or acknowledge it? A. Yes, sir. Q. It had some names on it before you got these three names? A. Yes, sir. Q. You didn't have the people whose signatures are attached to it, go before an officer themselves? A. I didn't. Q. Neither did Mr. Kirk? A. I have an idea they were all in the bank. They were customers and Leo knew their respective signatures. Q. You mean

Leo Rogers, the circuit clerk? A. Yes, sir. Q. Mr. Rogers signed the affidavit, but each person whose signature appears on it did not go before him, personally? A. No, sir. He knew their signatures.''

The only inference to be deduced from this testimony of appellant's counsel is that the signatures were obtained just as they usually are to ordinary petitions, and after twelve or fourteen signatures had been thus obtained the paper was carried to the circuit clerk, who signed his name to the jurat. None of the alleged affiants appeared before him. None of the alleged affiants testified; nor did Rogers, the circuit clerk.

The statute under the authority of which this contest was instituted provides that ''The complaint shall be supported by the affidavit of at least ten reputable citizens. * * *.'' Section 3772, Crawford & Moses' Digest.

The first case to construe this statute was that of *Logan* v. *Russell,* 136 Ark. 217, 206 S. W. 131. It was there held that the affidavit was jurisdictional, and that, unless it was made and filed within the time limited for filing, the court acquired no jurisdiction to hear the contest, and the complaint in that case was dismissed for the reason that this statute had not been complied with. This holding has since been adhered to and frequently reaffirmed. In the case of *Lanier* v. *Norfleet,* 156 Ark. 216, 245 S. W. 498, an affidavit had been filed which had been taken before an officer having no authority to administer an oath, and the contestant's complaint was dismissed for that reason. The mere signatures of ten reputable citizens is not therefore sufficient. They must make affidavit.

When and how is an affidavit made? This question is very thoroughly answered in the chapter on affidavits appearing in vol. 1 of American Jurisprudence, which is a rewriting of Ruling Case Law. At §§ 2-13-14 of this work the following statements appear: ''An affidavit is any voluntary *ex parte* statement reduced to writing and sworn to or affirmed before some person legally authorized to administer an oath or affirmation. It is made without notice to the adverse party and without oppor-

tunity to cross-examine. * * * Under the definitions of an affidavit given above, it is essential to the validity of an affidavit that it be sworn to, or affirmed before, some officer authorized to administer oaths or affirmations. There must be something which amounts to the administration of an oath or affirmation; this requires concurrent action on the part of the affiant and an authorized officer. * *. * The chief essentials of an affidavit are that it be in writing, and that it be sworn to, or affirmed before, some legally authorized officer.''

These essentials are absent in the instant case, and we therefore hold that the complaint was not supported by the affidavit required by law to confer jurisdiction. Whether the purported affidavit was actually filed in the case was a controverted question upon which the court did not pass, and we do not consider that question, as the affidavit was insufficient even though it was filed. Section 6, act 123, 1935, page 343.

The court therefore properly dismissed the complaint, and that judgment is accordingly affirmed.