4-5363 · 122 S. W. 2d 182

Opinion delivered November 21, 1938.

*Jeff Bratton,* for appellant.

*Kirsch & Cathey,* for appellee.

DONHAM, J. Appellant, Cicero Thompson, and appellee, G. S. Self, were rival candidates for nomination for the office of county and probate judge of Greene county in the 1938 primary election. According to the certificate of the county democratic central committee, it appears that Self received twenty-seven more votes than Thompson. Thompson instituted a contest by filing a complaint in pursuance of the statute in the Greene circuit court, alleging that many persons were permitted to

vote whose names did not appear upon the poll tax list and that many others were permitted to vote who had attained their legal age prior to the election and who were not required to have a poll tax receipt and that these persons were permitted to vote without giving the necessary information to show that they were legally entitled to vote without a poll tax receipt. Thompson further alleged that he had reason to believe that he received votes in certain townships which were not counted for him; and that if the illegal votes in said townships were thrown out, it would result in his being the lawful democratic nominee for the office of county and probate judge.

It was necessary that Thompson, in compliance with the statute, support his complaint by the affidavit of ten qualified electors who were members of the democratic party, and that the complaint, so supported, should be filed within ten days of the certification of which complaint was made. Section 4738 of Pope's Digest as amended by act 123, § 6, Acts of 1935.

The filing of the required affidavit within the ten-day period is jurisdictional. If the affidavit is insufficient at the close of the ten-day period, the contestant will not be permitted after the expiration of that time to amend the affidavit so as to confer jurisdiction upon the trial court. *Logan* v. *Russell,* 136 Ark. 217, 206 S. W. 131; *McLain* v. *Fish,* 159 Ark. 199, 251 S. W. 686; *Culpepper* v. *Mathews,* 167 Ark. 253, 267 S. W. 773.

The right to question the sufficiency of the affidavit, although it may appear sufficient on its face, is given the contestee under the law governing primary elections. *Kirk* v. *Hartlieb,* 193 Ark. 37, 97 S. W. 2d 434.

The supporting affidavit attached to the complaint of appellant bears the names of eleven persons. At the beginning of the trial, appellant conceded that one of these was not a qualified elector and agreed that his name might be stricken from the affidavit. This was done and only ten names were left. The record shows that one of the affiants, Wilder Carpenter, did not believe that he was under oath at the time he signed the affidavit. He testified that there was nothing in his signing to lead him

to believe that he was under oath. Another, C. E. Tennison, testified that he did not even know that the party before whom the affidavit was signed was a notary public until after he had signed the affidavit and left her office. Three others testified that they were called over the telephone by the notary public and asked if they had signed the affidavit. Two of them admitted that they had signed it and the third stated that he had not signed the affidavit, but that his son had signed it for him. It seems that all the notary would ask those whose names appeared as affiants was whether they had signed the affidavit and would swear to their signature.

In 1 R. C. L., p. 765, we find the following: "To make a valid oath or affirmation there must be some overt act which shows that there was an intention to take an oath or affirmation on the one hand and an intention to administer it on the other; for, even though such intention actually did exist, if it was not manifested by an unambiguous act, perjury could not be based thereon. If the attention of the person making the affidavit is called to the fact that it must be sworn to, and, in recognition of this, he is asked to do some corporal act, and he does it, the instrument constitutes a statement under oath, irrespective of any other formalities."

In American Jurisprudence, Vol. 1, §§ 2, 13, 14, title, affidavits, the following statements appear: "An affidavit is any voluntary *ex parte* statement reduced to writing and sworn to or affirmed before some person legally authorized to administer an oath or affirmation. It is made without notice to the adverse party and without opportunity to cross-examine. . . . Under the definitions of an affidavit given above, it is essential to the validity of an affidavit that it be sworn to, or affirmed before, some officer authorized to administer oaths or affirmations. There must be something which amounts to the administration of an oath or affirmation; this requires concurrent action on the part of the affiant and an authorized officer. . . . The chief essentials of an affidavit are that it be in writing, and that it be sworn to, or affirmed before, some legally authorized officer."

In American Jurisprudence, Vol. 1, p. 943, § 13, we find the following statement of the law: "In making an affidavit, the law requires that the affiant and the paper sworn to be in the personal presence of the officer administering the oath. Accordingly, the oath of the affiant cannot be taken over the telephone."

In the recent case of *Kirk* v. *Hartlieb, supra,* this court quoted with approval the foregoing quotations taken from §§ 2, 13, 14 of the chapter on affidavits appearing in Vol. 1 of American Jurisprudence, and there specifically held that where signatures were obtained as they usually are in ordinary petitions and then carried to an officer authorized to administer oaths who signs his name to the jurat, such purported affidavit, in an election contest, is insufficient.

The trial court held that the supporting affidavit attached to appellant's petition was insufficient and sustained appellee's motion to dismiss the complaint. We agree that the trial court was correct in so holding. No error appearing, the judgment is affirmed.

GRIFFIN SMITH, C. J.; SMITH and MEHAFFY, JJ., dissent.

SMITH, J. (dissenting). The "Motion to Dismiss and Strike Out Plaintiff's Complaint" reads as follows: "Comes the defendant, G. S. Self, and moves the court to dismiss and strike out the complaint of the plaintiff herein and for ground thereof states that said complaint is not supported by an affidavit of at least ten reputable citizens of Greene county, Arkansas, as by law required, and that no ten signers thereof have the requisite qualifications to make the same. Wherefore, defendant moves the court to dismiss and strike out plaintiff's complaint and for all other further relief."

The original primary election law required that "The complaint shall be supported by the affidavit of at least ten reputable citizens" (§ 3772, Crawford & Moses' Digest), and several of our cases defined who "reputable citizens" were within the meaning of the statute. See, *Bowers* v. *State,* 155 Ark. 35, 243 S. W. 864, and cases there cited.

This section, 3772, Crawford & Moses' Digest, was amended by § 6 of act 123 of the Acts of 1935, p. 339. This amendatory section reads as follows: "Hereafter when any election contest has been filed by any candidate in any legalized primary election under §§ 3772 and 3773 of Crawford & Moses' Digest of the Statutes of Arkansas, it is hereby declared that the only inquiry which can be made into the qualifications of the supporting affiants mentioned in § 3772 of said Digest must be confined to the question as to whether or not the said persons are qualified electors and members of the party holding said primary election under the rules prescribed by said party so holding the election and have in fact made the affidavit provided by the said § 3772. Qualified elector is hereby construed to mean any person who is entitled to vote in said election or has assessed and paid a poll tax as required by law." Under this section the only qualifications imposed upon affiants are that they be qualified electors and are members of the party holding the primary election sought to be contested. They must, of course, make the affidavit. The motion to dismiss does not raise the question that the affidavits were not made. The objection is that ". . . no ten signers thereof have the requisite qualifications to make the same." There were eleven affiants, and it is conceded that one of these did not possess the requisite qualifications. Ten remained, and no attempt was made to show that any of these ten were not qualified electors and members of the party holding the said primary election. There was, therefore, no testimony to support the objection made to the supporting affidavit, and the motion to dismiss should have been overruled for that reason.

It is insisted, however, that several—probably as many as five—of the alleged affiants did not in fact "make the affidavit." As we have shown, no such question was raised in the motion to dismiss, but, even so, the testimony is not sufficient, in our opinion, to sustain that contention.

Both parties cite, rely upon, and quote from the case of *Cox* v. *State,* 164 Ark. 126, 261 S. W. 303. The quotation from that opinion appearing in both briefs reads as

follows: "So here we think if appellant signed the affidavit for the purpose of swearing to it, knowing that the clerk regarded his act of signing the affidavit as a method of making affirmation, the jury was warranted in finding that appellant was sworn. *Fortenheim* v. *Claflin, Allen & Co.*, 47 Ark. 49, 14 S. W. 462.

"At § 8 of the chapter on Affidavits, in 1 R. C. L., p. 765, it is said: 'To make a valid oath or affirmation there must be some overt act which shows that there was an intention to take an oath or affirmation on the one hand and an intention to administer it on the other; for, even though such intention actually did exist, if it was not manifested by an unambiguous act, perjury could not be based thereon. If the attention of the person making the affidavit is called to the fact that it must be sworn to, and, in recognition of this, he is asked to do some corporal act, and he does it, the instrument constitutes a statement under oath, irrespective of any other formalities.' See, also, § 48 of the chapter on affidavits in 2 C. J. 337, the notes to the texts cited."

This Cox Case, from which we have just quoted, was an appeal from a judgment sentencing Cox to a term in the penitentiary under an indictment charging him with the crime of perjury, and the question upon which the decision turned was whether Cox had made an affidavit upon which to obtain a license to marry a girl under the age of fifteen years. The facts, as there stated, were that the clerk "then tendered to appellant (Cox) for his signature an affidavit which recited the girl's age to be eighteen. Appellant signed the affidavit and the license was issued, although appellant was not otherwise sworn." Upon these facts we held that an affidavit had been made and affirmed the conviction of Cox for perjury, committed by making a false affidavit.

There is no question here as to the sufficiency in form of the affidavit, nor is there any question that the officer attaching her jurat had that authority. It was held in the case of *Lanier* v. *Norfleet*, 156 Ark. 216, 245 S. W. 498, that the supporting affidavit required by the primary election law may be made before a duly qualified notary public.

Except as to Ed Gill there is no question but that all the affiants signed the affidavit. Gill, when asked, "Is this your signature?" answered, "That is Charlie's, my son, but I authorized him to sign it."

In the very recent case of *Harris* v. *Hall, Secretary of State,* 196 Ark. 878, 120 S. W. 2d 335, we had occasion to consider when one may adopt as his own a signature written by another at the request of the person whose name was signed. That opinion recognized as valid such signatures, although the adopted signatures in that case were held invalid for the reason that under the provisions of the I. & R. Amendment, there invoked, there was a statutory inhibition against a person signing any name other than his own to an initiative petition. Our attention has not been called to any inhibition applicable to affidavits such as the one here under review, nor are we aware of any such statute which would prevent one from adopting such a signature as his own. It is our opinion that Ed Gill "signed" the affidavit.

It appears that three of the affiants did not personally appear before the notary, but were sworn over the telephone. It is insisted, and the court below held, that those persons were not sworn, for the reason that they did not personally appear before the notary. We think this was error.

There appears at page 3626, Pope's Digest, a form for an acknowledgment of a deed by one grantor, which has appeared in all the digests of the statutes, and which is in universal use throughout the state. Section 1830, Pope's Digest, is given as authority for the use and sufficiency of the form of knowledgment there appearing. This recites that the grantor "appeared in person." Section 1830, Pope's Digest, provides that "The acknowledgment . . . shall be by the grantor appearing in person before such court or officer having the authority by law to take such acknowledgment, . . ." Notwithstanding this statute, we have held that an acknowledgment, even by a married woman, of a conveyance of her homestead, over the telephone, was a good acknowledgment. *Abernathy* v. *Harris,* 183 Ark. 22, 34 S. W. 2d 765; *Jolley* v. *Meek,* 185 Ark. 393, 47 S. W. 2d 43. In the case

last cited a number of cases were cited to the effect that the acknowledgment of a signature as one's own was effective even though the signature had not been previously authorized. The theory being that the telephone conversation was a personal appearance.

In the case of *Kirk* v. *Hartlieb*, 193 Ark. 37, 97 S. W. 2d 434, cited and relied upon by appellee the facts were, as there stated, "that the signatures were obtained just as they usually are to ordinary petitions, and often when twelve or fourteen signatures had been thus obtained the paper was carried to the circuit clerk, who signed his name to the jurat. None of the alleged affiants appeared before him." There was, of course, no appearance before the clerk whatever in that case.

The most equivocal testimony in the case was given by Wilder Carpenter, who admitted signing the affidavit in the presence of a notary public, but denied that he had been sworn. He testified, "Now, listen, I don't know what I done." When asked if, at the time he was signing, he thought he was under oath, he answered, "No, I didn't. I just didn't think nothing about it, paid no attention to it any more, I just signed it, because Cicero (the contestant) said—I just signed it." When asked if the stenographer, who was the notary public, swore him he replied, "I don't think she did." When asked, "You went with him (contestant) for the purpose of signing this affidavit," he answered, "Yes, sir, I signed it. I would have signed if she had swore me as quick as the other way." The court asked witness: "You didn't think you were under oath at that time." The witness answered, "No, when Mr. Kirsch came up there and asked me, did I swear to it, I said, No, I thought, when you swore to anything, you held up your hand and swore like you swear here in court. I paid no attention to it." These questions and answers make apparent the fact that the witness did not think he had been sworn because his hand had not been uplifted. This was not essential, as was decided in the Cox Case, *supra*.

The testimony of the affiant, C. E. Tenison, was less equivocal. He testified: "I signed before Mr. Bratton's stenographer (the notary), but so far as holding up my

right hand and being sworn I didn't know." Tenison further testified: "After I came down (from Bratton's office) I asked them, was that a notary public. She asked me did I thoroughly understand the affidavit. I told her I did." And when asked, "Were you intending to swear to that at the time you signed it?" he answered, "Yes, sir." Witness had previously read the affidavit, and when asked, "You thought at the time you were signing it it was an affidavit?" and he answered: "I suppose the affidavit would be sworn to, yes, sir." And when the witness was further asked, "Who was it told you it was an affidavit? Where does it say affidavit on it—that is, if it was an affidavit?" he answered, "Mr. Thompson (contestant) told me he was getting an affidavit."

We are of the opinion, therefore, that all five of the affiants whose affidavits are questioned had "made affidavit" in a manner sufficient to comply with the requirements of the law.

It must be remembered that a contest will not be entertained unless the complaint shall be supported by an affidavit filed within ten days of the certification of the result of the election, and we have several times held that this requirement is jurisdictional, and the contest will not be entertained unless the affidavit is made within the time limited. It cannot be made thereafter. It would appear, therefore, that the door for fraud and imposition might be opened wide if persons who apparently had made affidavit upon which the contest might be based could, after the time when other affidavits could be procured, be permitted to say that they had signed the affidavit, but had done so with mental reservations and did not consider that they had been sworn because the oath had not been administered in the manner which they thought the law required.

There appear no formalities required in making affidavits except that § 5215, Pope's Digest, is as follows: "Every affidavit shall be subscribed by the affiant, and the certificate of the officer before whom it is made shall be written separately, following the signature of the affiant. Civil Code, § 605." The affidavit here found defective fully complies with this statute. Following this

section the digester has the following annotation: "The requirement that the affidavit shall be subscribed by the affiant is merely directory. *Gill* v. *Ward*, 23 Ark. 16; *Mahan* v. *Owen*, 23 Ark. 347."

There is no intimation of fraud in this case, but if these affiants may defeat this contest upon the testimony offered, the perpetration of fraud in some other case may be easily accomplished. The partisans of a successful candidate, knowing that a contest is about to be instituted, could make the essential affidavit, and then, when it was too late to secure other signatures, show the reservations entertained by them, when they had made the affidavit, and thus defeat the contest.

For the reasons stated the writer, the Chief Justice, and Mr. Justice MEHAFFY dissent from the opinion of the majority holding that a proper affidavit had not been made.