MURPHY *v.* TRIMBLE, JUDGE.

4-6213                                        143 S. W. 2d 534

Opinion delivered October 2, 1940.

*Nance & Blansett,* for petitioners.

*E. M. Fowler* and *G. T. Sullins,* for respondent.

SMITH, J.   Separate suits were filed in the Madison circuit court by Van Albertson, Howard Brashears and

E. E. Polk, who were candidates at the Democratic primary election held in Madison county on August 27, 1940, for the respective offices of representative in the General Assembly, county judge and county treasurer, to contest the nominations of their respective opponents, Carl V. Stewart, Hugh Murphy and Andrew Nelson, who had been declared the nominees of the Democratic party for these offices by the party authorities.

The complaints are identical except the names of the parties and the offices for which they were candidates, and each complaint alleges numerous irregularities in holding the election, and that illegal votes were cast and counted for the contestee, which, if excluded, would result in the nomination of the respective contestants. We find it unnecessary to further abstract the allegations of the respective complaints.

Each complaint was supported by the affidavit required by § 4738, Pope's Digest. The three affidavits are identical, and each reads as follows:
"State of Arkansas, county of Madison—

"We, the undersigned residents and legal electors of Madison county, Arkansas, upon oath state that the contents of. foregoing complaint are true, and that we are members of the Democratic party of Madison county, Arkansas.

> "E. E. Polk
> Howard Brashears
> Lem Owens
> H. F. Hudson
> W. J. Drake
> A. A. Dennis
> F. C. Bunch
> Van Albertson
> C. F. Fitch
> J. G. Berry
> Wood Phillips

"Subscribed and sworn to before me this 4th day of September, 1940.
"(Seal)         "Janelle Brashears, Notary Public.
"Commission expires 11-9-40."

There are eleven affiants in each case. Each contestant is an affiant in his own case and in the cases of each of the other two contestants, so that, exclusive of the contestant, there were only ten affiants in any case.

Section 4738, Pope's Digest, prescribes the procedure to be followed in these contests, and requires the complaint to be supported by the affidavit of at least ten citizens.

We perceive no reason why a candidate for one office might not make the supporting affidavit to the contest of another person for a different office, if he is otherwise qualified to do so; but in each case the affidavits of ten qualified persons are required, in addition to the contestant himself. In other words, there must be ten affiants supporting the allegations of the plaintiff's complaint, in addition to the plaintiff himself.

It appears, therefore, that each complaint was supported by the minimum number of affiants required by law, and if any one of these should not be counted, the court would be without jurisdiction to proceed with the contest, it being held in the case of *Thompson* v. *Self*, 197 Ark. 70, 122 S. W. 2d 182, that the filing of the affidavits was essential to confer jurisdiction upon the court to hear the contest.

Identical motions to dismiss the contests were filed by the contestees in each of these cases, upon the ground that the complaint had not been supported by the affidavits of ten qualified electors, as required by law.

It was alleged in the motions to dismiss that certain affiants had not properly paid their poll taxes, and testimony was heard upon that issue.

It was alleged also that certain of the affiants had not made affidavit in support of the allegations of the respective complaints.

Without making any finding of fact or declaration of law, the court overruled the motions to dismiss the complaints, and, in so doing, said:

"The court: Well, this is where it comes down to the burden of the court. Now, I don't know—I have been

a clerk and I have been a collector and I know something about these things and how careless people get with them and I am not censuring anybody. I think everybody tried to tell the truth here as they saw it. There is nobody to blame about it. Everybody connected with this thing on both sides, they are all friends of mine. If I have an enemy in them, I don't know it. I do think this in a matter of this kind. I think that where there is a doubt in the court's mind that that doubt ought to be resolved in favor of seeing whether or not the allegations set forth are true. I am going to deny the motion to dismiss all of these cases. I want the contestants to select a clerk and I want the contestees to select a clerk and I will select one myself so we will be ready.

"The cases were consolidated for the purpose of this motion.

"Plaintiff excepts.

"The court: The court on his own motion is consolidating them for the purpose of hearing.

"Plaintiff excepts."

The court having indicated the purpose of proceeding with the trial of the causes, application was made here for a writ of prohibition, upon the ground that the court was without jurisdiction to hear the cases, there being a lack of the supporting affidavits required by law.

In his reference to his service as a clerk and as a collector, the court evidently had in mind the conflicting testimony as to whether the affiants, or certain ones of them, had properly assessed and paid their poll taxes. The trial court did not pass upon this question, nor shall we. Indeed, the practice is well settled that prohibition will not be granted in any case where the jurisdiction of the court is dependent upon the decision of controverted questions of fact. We will not, therefore, inquire whether the affiants were qualified electors, and if no other question were presented the writ of prohibition would be denied. *Simms Oil Co.* v. *Jones, Judge,* 192 Ark. 189, 91 S. W. 2d 258.

There is, however, another proposition in the case, and that is whether, assuming the affiants were qualified electors, less than ten of them made affidavit as required by law. Upon this proposition the undisputed testimony shows that less than ten of the alleged affiants made affidavit as required by law. The rule hereinbefore referred to, that this court will not determine disputed questions of fact to ascertain the presence or absence of jurisdiction does not apply. In such cases the decision of the trial court upon controverted questions of fact, upon which the existence or absence of jurisdiction depends, will be reviewed only upon appeal, and not in an application for prohibition to review an alleged erroneous decision.

The case of *Thompson v. Self, supra,* did not arise upon an application for a writ of prohibition, but it announced the principles which control here. That case was a contest for a county office, which the court declined to hear upon its merits, for the reason—found by the court—that the alleged affidavits had not been made in manner and form required by law. It was there said that "The filing of the required affidavit within the ten-day period is jurisdictional. If the affidavit is insufficient at the close of the ten-day period, the contestant will not be permitted after the expiration of that time to amend the affidavit so as to confer jurisdiction upon the trial court. *Logan v. Russell,* 136 Ark. 217, 206 S. W. 131; *McLain v. Fish,* 159 Ark. 199, 251 S. W. 686; *Culpepper v. Mathews,* 167 Ark. 253, 267 S. W. 773. The right to question the sufficiency of the affidavit, although it may appear sufficient on its face, is given the contestee under the law governing primary elections. *Kirk v. Hartlieb,* 193 Ark. 37, 97 S. W. 2d 434."

The affidavits in the case of *Thompson v. Self, supra,* like those in the instant case, were *prima facie* sufficient. It was shown by the testimony in that case, as in this, that they were not made in the manner and form required by law, and upon this showing having been made in the Thompson case, *supra,* the trial court held that it was without jurisdiction to try the case, and

it was dismissed for want of jurisdiction. That judgment was affirmed on the appeal to this court. That judgment was based upon the finding that the affidavits had not, in fact, been made by the purported affiants.

Here, the testimony of several of the alleged affiants shows that they did not make the affidavits. There is here a single jurat. It would appear, therefore, that if the affiants were sworn at all, they were all sworn at once. But it is undisputed that several, at least, of these were not sworn at all.

Harold Hudson, when asked who was present when he signed the affidavit, answered: "Mr. Brashears, Howard Brashear's father and his wife." Janelle Brashears, who signed the jurat as a notary, is the wife of Howard Brashears, one of the contestants. When asked if he understood he was swearing to the facts set forth in the petition, witness answered: "I understood it was an investigation into the election is what I understood it to mean." When asked, "Did anybody ask you if you were swearing to that?", the witness answered: "Certainly not. I read part of it and after I signed it, I went ahead and read from the duplicate." When asked, "Did anybody ask you if you were swearing to that?", he answered: "No one asked me if I was swearing to it." The witness stated that Howard Brashear's wife, who signed the jurat, was present, and, when asked, "Did she ask you if you were swearing to it?", answered: "No." The witness further stated that in his mind he intended to and thought he had made an affidavit.

The disqualification of this one affiant would leave the petition unsupported by the requisite number of signers.

At the conclusion of the examination of this witness, counsel for contestant said: "Mr. Fowler: I want to announce it is the understanding and we want the record to show that this affidavit was made by the witnesses signing it as an affidavit and the notary public attaching her jurat to it as their affidavit and that we are not intending to prove any other formal testimony

except that and we don't claim anything else. In other words, the oath is written as an oath and signed so; that is our contention and our admission is that nothing else was done except the signing of it and the notary public's jurat to that as this man's oath. That is the way it was done and that is true."

Notwithstanding this admission that all the affiants were sworn in the same manner, Wood Phillips, one of the alleged affiants, was called, and he testified that he signed the affidavit "Down there in Pat's station," [meaning evidently a filling station]. He was interrogated further as follows: "Q. Who was present? A. Nobody but me and Howard Brashears. Pat had stepped outside. Q. Did Howard Brashears bring the paper to you? A. Yes, sir. Q. How many papers did you sign? A. I think I signed four of them. Q. Did you swear to them? A. No." This witness further testified that Mrs. Brashears later asked him if he had signed the papers. She did not have the papers with her. He was asked: "Did she swear you to it?", and he answered: "By asking me I suppose. Q. Oh, she just asked you if you signed it? A. Yes."

C. F. Fitch admitted signing at least two affidavits at different times and places. He was asked: "Well, was Mrs. Janelle Brashears (the notary) there when you signed your second one?", and answered: "I don't know." "Q. But you know you were not sworn to either one of them?" He answered: "No, I wasn't."

Bert Baker testified that he had signed several petitions to contest elections, and, when asked, "Did anybody swear you to them?", answered: "No." This witness was asked if he told Mrs. Brashears that he had signed the affidavits, and he answered: "No, I never told her because she never asked me." "Q. So she wasn't present at the time you signed it and you never said anything to her about it nor she to you? A. No, sir."

Lem Owens identified his signature to the affidavits, but stated that he knew he was signing an affidavit for Howard Brashears' contest, but did not know

that he had signed any other, and, when asked, "Did anybody swear you to them?", he answered: "No."

W. J. Drake, another signer, when asked: "Did anybody swear you to that paper?", answered: "No, sir," although he admitted that having signed the paper, Mrs. Brashears attached her jurat, but she said nothing to him, and he said nothing to her.

The opinion in the case of *Thompson* v. *Self, supra,* defines the things essential to do to administer an oath, so that the purported affiants may be said to have "made an affivadit," and what was there said need not be here repeated.

Under the test there laid down it is apparent that the undisputed testimony of one or more of the alleged affiants shows conclusively that they did not make the affidavits required by law as interpreted in the Thompson case, *supra.*

If this fact were in dispute, the writ of prohibition would be denied. But inasmuch as the undisputed testimony shows that the affidavits required by law to confer jurisdiction was not made, the writ will be granted.

It is true, of course, that the petitioners for the writ might obtain relief by appeal; but that relief is not full and adequate. It was said in the recent case of *Norton* v. *Hutchins, Chancellor,* 196 Ark. 856, 120 S. W. 2d 358, that the writ of prohibition lies when an inferior court is proceeding in a matter beyond its jurisdiction, and that the remedy by appeal, though available, is inadequate.

The statement made in the oral argument was not questioned—and from the allegations of the complaints appears to be true—that the trial of this case upon its merits would involve great expense and would consume much time and the testimony of hundreds of witnesses would be taken. For the reimbursement of these costs petitioners here would be without remedy, even though they should prevail, when the case has reached this court on appeal. *Buchanan* v. *Parham,* 95 Ark. 81, 128 S. W. 563.

It was said in the recent case of *Gainesburg* v. *Dodge, Chancellor,* 193 Ark. 473, 101 S. W. 2d 178, that, while the erroneous exercise of jurisdiction will not be controlled by prohibition, this court will grant that relief to save one from the onerous burdens of litigation where the trial court is attempting to act without or in excess of its jurisdiction.

As it appears that the circuit court was without jurisdiction to hear this contest, through the lack of supporting affidavits, the writ must be granted, and it is so ordered.

GRIFFIN SMITH, C. J., and MEHAFFY, J., dissent.