1030

## W. N. RASMUSSEN AND PEARL E. RASMUSSEN, HIS WIFE *v.* C. J. HORNER COMPANY, INC.

73-216                                      505 S.W. 2d 225

Opinion delivered February 11, 1974

*Rasmussen and Hogue,* by: *Sigun Rasmussen,* for appellants.

*Glover and Sanders,* by: *R. Julian Glover,* for appellee.

CARLETON HARRIS, Chief Justice. Don Kymes, a building contractor, entered into a contract to build a house for W. N. Rasmussen and his wife, Pearle E. Rasmussen, appellants herein. Appellee, C. J. Horner Company, Inc. supplied certain materials provided within the contract for the alleged sum of $1,789.89. Kymes took bankruptcy and appellee sought recovery from the Rasmussens under the lien statutes. Appellants defended on the basis that appellee had failed to comply with the statutory requirements of Ark. Stat. Ann. § 51-613 (Repl. 1971). On trial, the court held that materials from Horner in the amount of $987.28 had been used in the Rasmussen house and judgment was granted for that amount; it was further provided that if the judgment be not paid, one acre of appellants' property described by metes and bounds should be sold as a matter of enforcing the lien. From the judgment so entered, appellants bring this appeal. For reversal, it is first asserted that the purported lien was defective because it was not sworn to as required by the statute. In

the alternative, it is asserted that certain items for materials were erroneously allowed by the court, it not being established by the evidence that these materials were used in the Rasmussen house.

Under the view that we take, there is no need to discuss the second point, for we are firmly of the opinion that the decree must be reversed because of the failure of Horner to make the required affidavit.

Ark. Stat. Ann. § 51-613 (Repl. 1971) provides:

"It shall be the duty of every person who wishes to avail himself of this act (§§ 51-601, 51-604—51-626) to file with the clerk of the circuit court[1] of the county in which the building, erection or other improvement is to be charged with the lien is situated, and within one hundred and twenty (120) days after the things aforesaid shall have been furnished or the work or labor done or performed, a just and true account of the demand due or owing to him, after allowing all credits, and containing a correct description of the property to be charged with said lien, *verified by affidavit.*" [Our emphasis].

While we apparently have no cases exactly in point on the matter presently before us, we have held that substantial compliance with the lien statutes is sufficient for recovery; however, our cases clearly indicate that the making and filing of the affidavit are essential to the validity of a lien. In *Georgia State Savings Association* v. *Marrs*, 178 Ark. 18, 9 S.W. 2d 785, the question was whether a proper affidavit had been executed on behalf of W. T. Marrs who sought to enforce a materialmen's and laborer's lien upon several properties, and the question in the litigation was whether his lien was superior to certain mortgages held by the appellant company. There, the affidavit was made by Mrs. R. B. Amos, who was the bookkeeper for Mr. Marrs, and this court held that her

---

[1] Chancery courts may foreclose mechanics' and materialmen's liens. See *Martin* v. *Blytheville Water Co.* (1914), 115 Ark. 230, 170 S.W. 1019; *Carr* v. *Hahn*, (1917), 126 Ark. 609, 191 S.W. 232; and *Sims* v. *Hammans* (1922), 152 Ark. 616, 239 S.W. 19.

affidavit was sufficient to meet the requirement of the law. The court then said:

> "The applicable statute (§ 6922, C. & M. Digest) requires the lien claimant to file 'a just and true account of the demand due or owing to him,' and that it be 'verified by affidavit.' But it is not required that the affidavit be made by the claimant himself. It is a sufficient compliance with the law if the affidavit is made and filed."

The court cited the case of *Terry* v. *Klein*, 133 Ark. 366, 201 S.W. 801, stating:

> "The claim of lien made by the interveners, Hayes-McKean Hardware Company, was sworn to before Bob Canton, who attached his seal as a notary public as a part of the jurat, but did not affix the words, 'notary public,' after his name, and did not give the venue of the affidavit by reciting where it was taken.

> "We think the case of *Railway Co.* v. *Deane*, 60 Ark. 524, 31 S.W. 42, is decisive of this question. It was there held (to quote the syllabus): 'Where, to an affidavit for appeal from a justice's court otherwise sufficient, but expressing no venue, there is attached a proper jurat showing that the oath was administered to the affiant by a notary public, it will be presumed that the notary acted within his jurisdiction.' "

Subsequently, it was stated:

> "The court said that *swearing the affiant was the essential fact* [our emphasis], and that if this were done and the officer administering the oath neglected to attest the fact, this would not render the affidavit a nullity, but that the defect might be cured by amendment. *Fortenheim* v. *Claflin, Allen & Co.*, 47 Ark. 49, 14 S.W. 462."

So, it is apparent that this court has consistently considered the making of the affidavit to be essential. On direct examination, Mr. Horner testified that he personal-

ly took the account for lien to the clerk, and that he had signed it.[2] The evidence of Horner on direct examination reveals the following:

"Q Did you ask that it be verified or signed where the Clerk's signature is to appear?

A Well, I don't know. The Clerk always signed them when I took them down there.

Q Did you make a request that he sign it or did you depend on the Clerk to sign it?

A I made the request, but I don't know whether he did it or not. He didn't?

Q No, it's not signed. Did you make a request to the Clerk that he sign it?

A Yes, sir.

Q And file it?

A Yes, sir.

Q Did you pay cash for it or do you have a credit account?

A I paid in cash for it."

On cross-examination, when Horner asked what he did when he walked into the clerk's office, the record reveals the following:

"A I just went up to the front of the counter and laid it down and told them I wanted to file it.

Q Told who?

A The clerk.

---

[2]The signature does not appear, but testimony reflected that the description of the property which was attached covered his signature.

Q Which clerk?

A I don't know. One of them down there in the office.

Q Male or female?

A I guess it was a female.

Q But you don't remember, do you?

A No, sir, this has been two or three years ago.

Q That's right. But do you specifically remember what you said to the clerk or the clerk·said to you and what you did?

A I took it in there and laid it down and ask her how much money she needed to file it and she told me a dollar. I paid it and went on back to the office.

Q And that's all you did the whole time you were there? In other words you laid it down in the form that it's there and ask her how much that it was and she said a dollar, and you gave her the dollar and then you walked out?

A Yeah."

The re-direct examination reveals the following:

"Q. Mr. Horner, I ask you if you made a request of the clerk at the time that you b[r]ought the lien in that he verify or did you ask him, do you remember, did you ask him specifically, to him or her—or whoever it was—to verify or did you depend on them to verify it?

A Well, I guess I just depended on them to verify it."

The lien account is neither verified by the clerk nor does the evidence show that any oath was given. Without question, under our cases, one or the other was essential. In *Cox* v. *State*, 164 Ark. 126, 261 S.W. 303 Justice Frank

Smith, in quoting from Section 8 of the chapter on Affidavits in 1 R.C.L., p. 765, said:

"To make a valid oath or affirmation there must be some overt act which shows that there was an intention to take an oath or affirmation on the one hand and an intention to administer it on the other; for, even though such intention actually did exist, if it was not manifested by an unambiguous act, perjury could not be based thereon. If the attention of the person making the affidavit is called to the fact that it must be sworn to, and, in recognition of this, he is asked to do some corporal act, and he does it, the instrument constitutes a statement under oath, irrespective of any other formalities."[3]

To present the picture clearly, let us say that the account filed by Horner contained a claim for some items which he knew he had not furnished to Rasmussen, such fact being provable by the prosecuting attorney. Could Horner have been convicted for perjury under the evidence heretofore set out of what transpired in the clerk's office? To ask the question is but to answer it, for it is obvious that under the proof it could never be shown that he had sworn to a false material statement.

Actually, to hold with appellee in this litigation, would have the effect of doing away with the requirement of the statute for verification of the lien account, and we have neither the authority, nor the desire, to do this.

Reversed and dismissed.

---

[3] The same quote appears in *Thompson v. Self*, 197 Ark. 70, 122 S.W. 2d 182.